IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**HD SUPPLY WATERWORKS,**
**limited partnership,**

        **Plaintiff,**

v.                        No. CIV 07-991 BB/DJS

**JAY T. CORAZZA,**

        **Defendant.**

## MEMORANDUM OPINION
## IN SUPPORT OF PRELIMINARY INJUNCTION

THIS MATTER is before the Court on *Plaintiff HD Supply Waterworks, Ltd.'s Motion for a Preliminary Injunction* [doc. 13] seeking to prohibit Defendant Jay T. Corazzo from violating an Employment Agreement and Restrictive Covenants Agreement. Having reviewed all the submissions of counsel and held an evidentiary hearing on February 27, 2008, the Court finds Plaintiff has met its burden and is entitled to a preliminary injunction.

**I.**   **Facts**

Defendant was the Albuquerque Branch Manager for, and 3% owner of, Waterworks Holding Company. In 2001, Defendant, along with the other shareholders, sold the stock of Waterworks Holding Company to a competitor, Hughes Supply, Inc., and Defendant received $1,200,000.00 for his stock. Contemporaneously with the sale, Defendant executed an Employment Agreement and a Restrictive Covenants Agreement in favor of Hughes Supply, Inc. Following another merger, Defendant became an employee at Hughes Water & Sewer,

Ltd. ("HW&S"), and the assets of HW&S, including Defendant's Agreements, then became HW&S assets. HW&S was later acquired by another competitor, HD Supply Waterworks, Ltd. ("HDSW"), Plaintiff in this case. Defendant became an employee of HDSW and remained legally bound by the same Employment Agreement and Restrictive Covenants Agreement. This merger caused organizational problems as many of the employees of Hughes and HDSW, including Defendant, had overlapping responsibilities. Not happy with his potential in the new company, Defendant approached another competitor, Ferguson Waterworks ("Ferguson"), and offered to establish an Albuquerque branch for them. Defendant resigned his employment with Plaintiff on June 12, 2006, and immediately began working for Ferguson for the same compensation. Since Defendant opened a Ferguson branch, it has successfully outbid Plaintiff on several jobs in New Mexico and El Paso.

**II.   Discussion**

    **A.   The Agreements**

The Employment Agreement signed by Defendant contains the following prohibition:

> 9(a)   During the time when the Executive is employed by the Employer and for a period of two (2) years after the last date on which Executive receives any salary, bonus or severance compensation from Employer or any affiliate of Hughes (the "Restrictive Period") (irrespective of whether the Executive's termination of employment with the Employer was voluntary or involuntary), the Executive specifically agrees that the Executive shall not (except on the behalf of Employer or Hughes or any of their affiliates while the Executive is employed by the Employer), either directly or indirectly, as a stockholder of any corporation or partner of any partnership or as an owner, investor, principal or agent, or in any other manner, engage in any business within the geographic area described on Exhibit "B" attached hereto (the "Geographic Area"), which competes in any manner with any business conducted by Employer immediately prior to the Closing or during the term of Executive's employment with Employer (or other affiliate of Hughes engaged in the Business or a substantially similar business.

**The Restrictive Covenants Agreement contains similar language.[1]**

**Additionally, the Agreement goes on to provide in Paragraph 3(b):**

> **The Stockholder agrees that so long as Stockholder is working for Hughes or Company (or any other affiliate of Hughes), <u>the Stockholder shall not undertake the planning or organizing of any business activity competitive with the Business or Company or Hughes</u>. The Stockholder agrees not to directly or indirectly solicit or induce any of Company's or Hughes' employees to work for Stockholder or for any business which is competitive with the Business conducted by Company or Hughes prior to the date on which Stockholder's employment with Company is terminated, within the Geographic Area and during the Restrictive Period. (Emphasis added).**

**It also contains a choice-of-law provision providing Florida law should govern.**

**B.   <u>Preliminary Injunction Standards</u>**

**Under Florida law, a party seeking a preliminary injunction based on a covenant not to compete must establish: (i) the existence of a contract, including a "legitimate business interest" as defined by section 542.335 [Florida Statutes]; (ii) an intentional breach of the covenant not to compete; (iii) "the existence of no adequate remedy except injunctive relief, recognizing that irreparable harm is presumed."** *Sarasota Beverage Co. v. Johnson*, **551 So. 2d 503, 507 (Fla. App. 1989);** *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, **808 F. Supp. 1555 (S.D. Fla. 1992),** *aff'd*, **2 F.3d 405 (11th Cir. 1993). At this stage, Plaintiff**

---

[1]   3.   <u>Restrictive Covenants</u>.

(a)   During the time when the Stockholder is employed by Company and for a period of two (2) years after the last date on which Stockholder receives any salary, bonus or severance compensation from Company, Hughes or any affiliate of Hughes (the "Restrictive Period") (irrespective of whether the Stockholder's termination of employment with Company, Hughes or any affiliate thereof, was voluntary or involuntary), the Stockholder specifically agrees that the Stockholder shall not (except on behalf of Hughes or Company which the Stockholder is employed by Company), either directly or indirectly, as a stockholder of any corporation or partner of any partnership or as an owner, investor, principal or agent, or <u>in any other manner, engage in any business within the geographic area described on Exhibit "A"</u> attached hereto (the "Geographic Area"), which <u>competes in any manner with the Business conducted by Company or Hughes</u> immediately prior to the Closing. (Emphasis added).

3

has made a sufficient showing on each of these elements for the issuance of a Preliminary Injunction.

### (i) Existence of a Contract

There is no controversy that Defendant knowingly executed both the Employment and Restrictive Covenants Agreements. In return, he received an annual salary of approximately $120,000.00 and $1,200,000.00 for the sale of his stock.

### (ii) Intentional Breach of the Contract

While it is not absolutely clear at this stage, it appears there is a preponderance of the evidence to support Plaintiff's claim. Defendant admits he approached Plaintiff's competitor, Ferguson, regarding using Defendant's knowledge of the New Mexico-El Paso market, and his ability to generate business therein, while he was still employed by Plaintiff, a seeming breach of Restrictive Covenant 3(b). He then left Plaintiff's employment and immediately went to work for a competitor, Ferguson, in Albuquerque and El Paso; a time frame and territory clearly prohibited by both the Employment and Restrictive Covenants Agreements.

Defendant maintains he thought the Employment Agreement expired in three years (*i.e.*, in 2004). This is contrary to the clear language of both Agreements which tie their termination dates to two years from the date of the employee's last compensation. He also introduced evidence that while he was negotiating with Ferguson, he called Plaintiff's Regional Human Resources Manager, Merrie Moye, to see if there was any contractual limits on his working for a competitor. Defendant testified Ms. Moye said no such legal impediment existed. However, by affidavit, Ms. Moye testified:

> 3. I understood from Mr. Corazza's comments to me that he had resigned from HD Supply's New Mexico waterworks company.
>
> 4. He asked me what the term of his employment agreement was. I looked at his employment agreement and told him the term, which I recall was for three years. We did not discuss any other part of his employment agreement.
>
> 5. We did not discuss whether he was subject to a covenant not to compete after his resignation.

Moreover, the date of the phone records introduced by Defendant seems to support Ms. Moye's recollection that Defendant had already resigned and that he had already started working for Ferguson.

      (iii)    **No Adequate Remedies**

There is a presumption of irreparable injury only where the employee uses "specified trade secrets, customer lists or direct solicitation of existing customers." FLA. STAT. 542.33(2)(a). There is no evidence Defendant used specified trade secrets or customer lists. And while Ferguson is clearly bidding against Plaintiff for water jobs, and some of these jobs are apparently being let by prior customers of Plaintiff, this is not the kind of "direct solicitation of existing customers" contemplated by the Florida statute. *See Lotenfoe v. Pahk*, 747 So. 2d 422 (Fla. App. 1999). However, without an injunction, Ferguson will continue to take potential business from Plaintiff which they could not have obtained but for Defendant's switching employers. Wayne Case, the Regional Manager of Ferguson, testified they would not have even entered the Albuquerque-El Paso market in 2006 without Defendant's contacts and experience. He said he did plan to consider the New Mexico market at some point, maybe in 2008, but that Ferguson could not train and supervise sufficient personnel to consider the

New Mexico territory any sooner than that.  This supports a preliminary injunction.  *Merrill Lynch v. Hagerty, supra*.

This will serve as the Court's Findings of Fact and Conclusions of Law in support of a Preliminary Injunction which shall be drafted by Plaintiff's counsel and presented to the Court within thirty (30) days.

DATED this 25th day of March, 2008.

                                                         **BRUCE D. BLACK**
                                                        **United States District Judge**